UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENDA DAVIS,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:08-cv-00525 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF GLENDA DAVIS |

       Glenda Davis ("Plaintiff") asserts she is entitled to benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the credibility of her subjective complaints. Therefore, Plaintiff seeks judicial review of the decision denying her claim for benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

## PROCEDURAL HISTORY[1]

       Plaintiff filed an application for benefits on April 6, 2005, alleging disability beginning October 9, 2004. AR at 24, 40. The Social Security Administration denied her claim initially and upon reconsideration. *Id.* at 24. After requesting a hearing, Plaintiff testified before an ALJ on March 7, 2007. *Id.* at 325. The ALJ determined Plaintiff was not disabled under the Social Security Act, and

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

issued an order denying benefits on September 29, 2007. *Id.* at 24-31. The Appeals Council denied Plaintiff's request for review on January 31, 2008. *Id.* at 12-14. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner"). Plaintiff initiated a civil action seeking judicial review of the decision on April 14, 2008. (Doc. 2).

While Plaintiff's request for review was pending before the Appeals Council, Plaintiff filed a second application for benefits on October 24, 2007. AR at 569-72. Again, Plaintiff alleged disability beginning October 9, 2004. *Id.* at 569. The second application was denied initially on January 31, 2008, and upon reconsideration on April 30, 2008. *Id.* at 278.

On October 14, 2008, the District Court remanded the first-filed action pursuant to sentence six of 42 U.S.C. § 405(g) because the recording of the hearing held on March 7, 2007, was incomplete. (Doc. 12). After holding a hearing on February 13, 2009, the ALJ consolidated Plaintiff's first application and second application because she "alleg[ed] the same impairments and the same alleged onset date of October 9, 2004." AR at 278. Again, the ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on June 25, 2009. *Id.* at 278-86. The Appeals Council "found no reason . . . to assume jurisdiction" over the opinion. *Id.* at 269. Thus, the ALJ's findings became the decision of the Commissioner. *Id.* at 270.

On October 4, 2011, the Court granted the Commissioner's motion to re-open the action following the conclusion of the remand proceedings. (Doc. 24).

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider objective medical evidence and hearing testimony.  20 C.F.R. §§ 404.1527, 404.1529.

**A.   Relevant Medical Opinions**

Dr. Chris Yoon performed an examination of Plaintiff on October 12, 2004.  AR at 151-52.  Dr. Yoon noted Plaintiff reported her low back pain about five days before the examination, at which

3

time Plaintiff "woke up . . . with some soreness and minor pain in the back." *Id.* at 151. Although Plaintiff went to work, "the pain got progressively worse" and by the end of the day, she "was having significant difficulty with movement." *Id.* Dr. Yoon observed Plaintiff had "severe tenderness at the left gluteal muscles," and she walked with a "moderately antalgic [gait] due to back pain." *Id.* at 152. He gave Plaintiff two injections that provided "moderate pain improvement" and prescribed a Medoral Dosepak. *Id.* Dr. Yoon determined Plaintiff was temporarily precluded from work activity. *Id.* at 153.

Dr. Rashidi performed a neurosurgical consultation upon the referral of Dr. Yoon on April 4, 2005. AR at 126, 409. Dr. Rashidi noted Plaintiff complained of "[l]ow back pain with radiation to the legs," which started when she was working and lifting heavy objects. *Id.* Dr. Rashidi determined: Plaintiff's cranial nerves were normal, and Plaintiff had "normal power in upper and lower extremities bilaterally." *Id.* at 127, 410. Plaintiff had "decreased sensation in the left L5 dermatome." *Id.* Also, Dr. Rashidi found Plaintiff had "degenerative changes and mild disk bulge at the L4-L5 level, with mild foraminal stenosis, more on the right side . . . [and] mild degenerative changes at the L2-L3 level." *Id.* Dr. Rashidi decided "to continue conservative treatment, to include no heavily lifting or repeated bending." *Id.*

Dr. Lavana Bobba affirmed the findings regarding Plaintiff's abilities on September 23, 2005, but set forth different postural limitations. AR at 167-72. Specifically, Dr. Bobba opined Plaintiff was able to frequently balance; climb ramps, stairs, ladders, ropes, and scaffolds; crouch; and crawl. *Id.* at 168. However, she determined Plaintiff was limited to occasionally stooping and kneeling. *Id.* According to Dr. Bobba, Plaintiff had no manipulative, visual, communicative, or environmental limitations. *Id.* at 163-70.

On June 14, 2005, Dr. Carmen DeLaRosa completed a physical residual functional capacity assessment. AR at 150-65. Dr. DeLaRosa found Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight hour day. *Id.* at 152. Dr. DeLaRosa found Plaintiff was able to occasionally stoop, kneel, and crouch. *Id.* at 153. In addition, Plaintiff could frequently balance and climb ramps and stairs, although she could never climb ladders, ropes, or scaffolds. *Id.* Dr. DeLaRosa explained Plaintiff should "avoid ambulating over uneven terrain," but had no further limitations. *Id.* at 159-60.

On October 9, 2006, Dr. Martin Berry performed a rheumatologic consultation. AR at 425. Dr. Berry noted Plaintiff was "off work due to a back injury" and "had pain in her hands, knees and feet." *Id.* According to Dr. Berry, Plaintiff had "mild restriction" in her neck and low back motion. *Id.* at 425-26. Based upon the examination, Dr. Berry opined he was "fairly doubtful [Plaintiff] has lupus." *Id.* at 426. Rather, Dr. Berry found Plaintiff appeared "to have mostly nonspecific aches and pains." *Id.*

Dr. Emanuel Dozier performed a consultative examination on January 14, 2008. AR at 704-09. Dr. Dozier reviewed Plaintiff's medical records and performed a physical exam. *Id.* Plaintiff described her joint pain as "8/10," and reported pain medication offered "poor relief." *Id.* at 705. In addition, she informed Dr. Dozier that she "has limitations in standing 30 minutes, walking one block, sitting 30 minutes and lifting 10 pounds." *Id.* According to Dr. Dozier, Plaintiff had demonstrated "joint tenderness and pain in the metacarpopahlangeal joints of the hands," as well as tenderness in the knees and acromi-clavicular joints of both shoulders. *Id.* at 708-09. Further, he found Plaintiff had "diminished range of motion of the shoulders and also diminished grip and upper extremity strength." *Id.* at 709. Based upon the examination, Dr. Dozier found: "There would be limitations on standing and walking to six hours and sitting to six hours due to the back findings. . . . She could lift and carry 20 pounds occasionally and 10 pounds frequently due to the back and cervical findings." *Id.* at 709. Further, Dr. Dozier determined Plaintiff had "postural limitations to occasional bending, stooping, crouching, pushing, and pulling" and "manipulative limitations to frequent reaching, handing, feeling, grasping, and fingering." *Id.* Finally, Plaintiff had environmental limitations, including "occasional climbing ladders, working inclined planes, or uneven terrain." *Id.*

Dr. Elpidio Fonte completed a physical residual functional capacity assessment on January 30, 2008. AR at 710-14. Dr. Fonte determined Plaintiff was able to lift and carry ten pounds frequently and twenty pounds occasionally, stand/and or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. *Id.* at 711. In addition, he found Plaintiff's ability to push and pull was unlimited, as was her ability to perform handling (gross manipulation) and fingering (fine manipulation). *Id.* at 711-12. Plaintiff was able to "occasionally" perform postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* at 712. Dr. Fonte opined

Plaintiff should avoid concentrated exposure to hazards, including machinery and heights. *Id.* at 713.

On April 29, 2008, Dr. Anne Khong completed a physical residual functional capacity assessment, affirming the findings of Dr. Fonte regarding Plaintiff's ability to lift and carry ten pounds frequently and twenty pounds frequently and to sit, stand and walk about six hours in an eight-hour day. AR at 730. However, Dr. Fonte opined Plaintiff could never balance; frequently stoop; and occasionally climb, kneel, crouch, and crawl. *Id.* at 731. She found Plaintiff did not establish manipulative or environmental limitations. *Id.* at 731-32. Dr. Fonte noted, "Current records show that the [claimant] is being managed conservatively. She has been dismissed from the service of rheumatologist Berry and will be followed by her [primary care physician]. It is appropriate to affirm a light RFC [with] postural limits." *Id.* at 735.

Dr. William Baker completed an undated medical source statement related to Plaintiff's physical abilities. AR at 358-59. Dr. Baker opined Plaintiff had the ability to lift and carry less than ten pounds occasionally and sit less than six hours in an eight-hour workday. *Id.* at 358. In addition, Dr. Baker opined Plaintiff required the option to alternate between sitting and standing "as needed for pain relief." *Id.* at 359. According to Dr. Baker, Plaintiff was never able to climb, balance, stoop, kneel, crouch, or crawl. *Id.* He noted Plaintiff had "generalized pain," as well as "back and neck pain due to generative disease." *Id.*

**B.     Hearing Testimony**

Plaintiff testified at a hearing before the ALJ on February 13, 2009. AR at 494. She reported she had a high school education, and last worked in October 2004. *Id.* at 503. Plaintiff explained she worked in the meat and deli departments of a grocery store doing "over-the-counter help," which required her to wait on customers and package meat, and break down pallets. *Id.* at 503-04. She reported: "I bent. I stooped. I pulled. I kneeled and cut meat and everything." *Id.* at 504. Further, Plaintiff said she "lifted heavy boxes of meat," which weighed "[a]nywhere from 50 to 70 or 80 pounds." *Id.* at 504. She reported that she worked in varying environments "[o]n and off all through the day," going from outside to refrigeration units. *Id.* at 506.

Plaintiff believed she was no longer able to work because she injured her back. AR at 507. She explained she was off work for about a week before returning, but her back started hurting once

again and she was unable to get out of bed. *Id.* Plaintiff reported she sought medical treatment for her back pain, and "started getting shots in [her] lower back and up through [her] back." *Id.* She her doctors gave her epidural shorts and prescribed Vicodin for the pain. *Id.* Further, Plaintiff said she was referred to a specialist, although she was not evaluated for surgery. *Id.* at 507-08.

In addition to her back pain, Plaintiff testified she had problems with her neck, shoulders, elbows, wrists, hands, feet, and legs. AR at 508. She stated her neck gave her "trouble turning to side to side," and she had a problem with holding her had in a fixed position. *Id.* at 509. Plaintiff said she had "really sharp pains" in her shoulders and "trouble moving [her] arms," including raising her arms to at or above shoulder level. *Id.*

Plaintiff explained her hands "would feel like they're frostbit and then they'd start defrosting." AR at 510. With these "tingling and burning" sensations, Plaintiff said it was difficult to grip or grasp items. *Id.* Further, Plaintiff said her legs "felt like pins and needles were sticking in." *Id.* at 511. Plaintiff reported she was referred to pain management, as well as a physician specializing in disorders including osteoarthritis, lupus, and fibromyalgia. *Id.* According to Plaintiff, the specialist put her on medication and she went to physical therapy. *Id.*

She testified she was taking medication for depression and fibromyalgia. AR at 512. Plaintiff reported the medication caused her to become very sleepy and "a little dizzy." *Id.* Further, she stated the medication affected her ability to focus or concentrate. *Id.* Plaintiff explained, "It's hard to focus on stuff, and it's hard to concentration in the sense of I have to think about it for a while and everything." *Id.*

According to Plaintiff, she spent an average day in bed because it felt better on her joints. AR at 513. In addition, Plaintiff reported she watched television. *Id.* Plaintiff estimated she was spent "less than two hours" standing or walking each day. *Id.* She believed she was able to "sit for about 40 minutes" before she would "have to get up and move." *Id.* at 514. Plaintiff reported, "[I]f I could, I'd like to stay in bed all day." *Id.* She stated she did not do any household chores or grocery shopping, but drove "about once a week" to go to the doctor or pick up her prescriptions. *Id.* at 514-15.

Vocational expert Kenneth Ferra ("VE") testified after Plaintiff at the hearing. AR at 517. The VE characterized Plaintiff's past relevant work in the meat department as "heavy and semiskilled" and

in the deli department as "medium and semiskilled." *Id.* at 518. In addition, the VE explained her work as a store clerk with the pallets was "heavy and semiskilled." *Id.*

The ALJ asked the VE to consider a hypothetical individual the same "age, education, and work experience" as Plaintiff. AR at 518. The ALJ specified the worker was "capable of light physical exertion," but could "never climb ladders, ropes, or scaffolds." *Id.* The individual could frequently balance and occasionally stoop, kneel, crouch, crawl, climb, and reach overhead." *Id.* Further, the worker "must avoid concentrated exposure to hazards." *Id.* With these limitations, the VE opined the worker was unable to perform Plaintiff's past relevant work, but was able to perform other work in the regional or national economy. *Id.* As examples, the VE identified the positions of cashier, *DOT*[2] 211.462-010; cleaner, *DOT* 323.687-014; and fast food worker, *DOT* 311.472-010. *Id.*

Next, the ALJ asked the VE to consider a worker who could "stand and walk less than two hours and sit less than four hours in an eight-hour day." AR at 519. The VE found, regardless of any other limitations, such a person was unable to perform work in the national economy. *Id.*

## C.   The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 9, 2004. AR at 280. The ALJ found Plaintiff's severe impairments included "lupus or inflammatory arthritis, amblyopia of the left eye, and degenerative disc disease." *Id.* However, Plaintiff's depression was not a severe impairment. *Id.* at 280-81. The ALJ found the impairments did not meet or medically equal a listing. *Id.* at 281.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit, stand, and walk 6 hours in an 8-hour work day; occasionally to stoop, kneel, crouch, and craw, and climb ramps or stairs; and frequently to balance." AR at 281. In addition, Plaintiff could "never climb ladders, ropes or scaffolds; and she must avoid concentrated exposure to hazards." *Id.* With this RFC, Plaintiff was not capable of performing her past relevant work. *Id.* at 285. However, the ALJ found Plaintiff's "age, education, work experience

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

and residual functional capacity allow her to perform jobs that exist in significant numbers in the national economy." *Id.* Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 286.

## DISCUSSION AND ANALYSIS

The sole issue identified raised by Plaintiff on appeal is that the ALJ erred in finding her subjective complaints lacked credibility.[3] (Doc. 31 at 4-9). In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036. Consequently, an adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

When evaluating the credibility of Plaintiff's subjective complaints, the ALJ noted: "After carefully considering the evidence, I find Ms. Davis's medically-determinable impairments can reasonably be expected to produce her alleged symptoms, but her statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of her residual functional capacity." AR at 284. In support of his credibility determination, the ALJ considered Plaintiff's activities of daily living. *Id.* Further, the ALJ explained: "[T]he objective findings set forth in the medical evidence of record do not support those complaints. For this reason, her allegations of disability are not entirely credible." *Id.* at 285. Defendant argues the reasons articulated by the ALJ were sufficient to reject Plaintiff's credibility, and

---

[3] The *single* argument heading in Plaintiff's opening brief asserts "The ALJ failed to provide clear and convincing reasons to reject the subjective symptoms of Glenda Davis." *Id.* at 4. The Ninth Circuit instructs that the Court will "review only issues which are argued specifically and distinctly." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

that the ALJ properly considered the objective medical evidence, opinion evidence, and Plaintiff's daily activities. (Doc. 32 at 5-9).

*Plaintiff's daily activities*

Plaintiff argues the ALJ failed to properly consider her ability to perform daily activities. (Doc. 21 at 8). According to Plaintiff, she "has impairments that cause flare-ups. Some days are better than others, and she openly and honestly admitted this to the ALJ." *Id.* On the other hand, Defendant asserts, "the ALJ's interpretation of her activities was reasonable and supported." (Doc. 32 at 8). Defendant argues Plaintiff's activities "suggest the ability to perform light work." *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Mayes v. Massanari*, 276 F.3d 453, 457, 461 (9th Cir. 2001)).

In *Burch*, the ALJ explained the claimant's "daily activities 'suggest that she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and her boyfriend. She is able to manage her own finances and those of her nephew." *Id.*, 400 F.3d at 680. Likewise, here the ALJ noted Plaintiff "can take care of her personal needs," "cook when physically able, drive, grocery shop, socialize with family and friends, and go for walks when physically able." AR at 284. The ALJ concluded these activities were "consistent with a light residual functional capacity." *Id.*

As the Ninth Circuit explained in Burch, "Although the evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and [the court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400 F.3d at 680 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Accordingly, the ALJ's determination that Plaintiff's daily activities are consistent with the ability to do light work supports the adverse credibility determination. *See, e.g., id.* at 680-81*; see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (rejection of the claimant's complaints was proper where the ALJ determined her activities of daily living "tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis").

///

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

Here, the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ noted that Plaintiff reported back and neck pain, "but her neurological examinations were consistently normal." AR at 282. In addition, the ALJ observed: "By December 2, 2004, the range of motion of her back had continued to improve, she had no muscle spasm or tenderness in her back, her gait was normal, and she could heel-toe walk although she continued to have moderate to severe tenderness in her gluteal muscles." *Id.* The ALJ noted in February 2005, Plaintiff "had no sciatic symptoms, straight leg raise tests and gate were normal, and she could heel-toe walk without difficulty." *Id.* Dr. Rashidi "released Ms. Davis to work with restrictions of no heavy lifting over 30

pounds and no repetitive bending or twisting," which the ALJ noted was "consistent with light work." *Id.* Moreover, in May 2007, Dr. Berry "saw no active rheumatoid arthritis and lupus serologies were unremarkable." *Id.* at 283. Having reviewed the evidence, the ALJ concluded the "[v]arious diagnostic studies revealed only minimal or normal findings." *Id.* Therefore, the ALJ met his obligation to "explain what evidence undermines the testimony." *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Consequently, the objective medical evidence was a valid consideration in the ALJ's credibility determination.

## CONCLUSION AND ORDER

The ALJ set forth clear and convincing reasons to reject Plaintiff's subjective complaints, and satisfied the burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied the proper legal standards and his findings are supported by substantial evidence. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Glenda Davis.

IT IS SO ORDERED.

Dated:   **December 19, 2012**           /s/ Jennifer L. Thurston
                                         UNITED STATES MAGISTRATE JUDGE